**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DALLAS BUYERS CLUB, LLC, ) | |
| ) | Case No.: 14-cv-1639 |
| Plaintiff, ) | |
| ) | Judge Thomas M. Durkin |
| v. ) | |
| ) | Magistrate Judge Geraldine Soat Brown |
| DOES 1-52, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF JOINDER**

**I.     INTRODUCTION**

Plaintiff submits this Memorandum in accordance with the Court's March 19, 2014 Order and herein addresses the Court's concern regarding joinder.

Plaintiff respectfully submits that the temporality standard contemplated by the Court is based on a misunderstanding of how BitTorrent file sharing operates and is inapplicable where, as here, a plaintiff pleads claims "arising out of the same… *series of transactions* or occurrences." Fed. R. Civ. P. 20(a)(2) (emphasis added).

In addition, Plaintiff recognizes the Court's concern with respect to potential litigation abuse, and advises the Court that the present lawsuit involves none of the indicia of abuse identified in prior cases filed by other counsel. Moreover, Plaintiff believes that joinder reduces the risk of abuse of the Doe Defendants and promotes judicial economy. Finally, Plaintiff notes that it has not demonstrated any bad faith intentions and that any presumption to the contrary is without merit. As such, Plaintiff urges the Court to maintain joinder in this matter.

**II.    THE TEMPORALITY STANDARD IS FLAWED**

The temporality standard contemplated by the Court, which originated in various case decisions and in a Note from a law student, improperly divorces the joinder analysis from the "series of transactions" referenced by Rule 20 because it (a) ignores "logically related" fact patterns; (b) ignores

1

alternate transactions pled by Plaintiff; (c) requires direct transactions, contrary to Supreme Court precedent; and (d) fails to address the Supreme Court's preference for joinder.

      i.      **The Temporality Standard is Logically Inconsistent and Unreasonable**

"The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits," 111 Mich. L. Rev. 283, makes a fatal error in the analysis of BitTorrent operation -- an error that respectfully was overlooked by the Court in *Zambezia Film (Pty) Ltd. v. Does 1-33*, 2013 WL 1181587 (N.D. Ill. Mar. 20, 2013) and in many of the other decisions supporting severance. This error is one of internal consistency and is apparent from reading the cited quotation itself where the author references "uploading pieces of the file to any other users who enter into the swarm." 111 Mich. L. Rev. 283, 293. Plaintiff has placed this phrase in bold and supplied the logical corrections and conclusions in italics:

> Now, after the exchange, assume all four stay plugged into the swarm through Day 2, **uploading pieces of the file to any other users who enter into the swarm**. On Day 3, B, C, and D disconnect. The next day E, F, and G enter the swarm with A. Since the swarm develops around the file, E, F, and G are part of the same swarm that A, B, and C were in. However, now the file exchange is occurring between A, E, F, and G *and any other users who entered into the swarm on Day 2*. By contrast, B, C, and D have no *contemporaneous* involvement with the second exchange because they left the swarm. Given that B, C, and D were not and could not be *direct* sources for E, F, and G, *but any other users who entered into the swarm on Day 2 would necessarily have obtained piece(s) of the file from B, C, and D and then necessarily provided those pieces in turn to E, F, and G,* the former group's acquisition of the file *can be considered part of the same series of transactions as* the latter's. Id. at 295.

In short, even in a hypothetical situation specifically constructed to emphasize the potential for separation between particular BitTorrent users over time, the author has acknowledged that other users may join the process at any point. These other users immediately become sources for any piece of the file that has been downloaded, and as such they serve as secondary sources for the material previously provided by users B, C and D. It is irrelevant that B, C and D are not direct sources for E, F and G because new user X would connect them in a series of transactions. Because a BitTorrent client seeks to download from *any* available source and serves as a source to *any* requesting downloader, and because

the system is designed to survive the termination of participation by any midpoint user, there is no basis for finding an artificial distinction between direct and indirect transactions, particularly given that these features are known and central to BitTorrent file sharing.

This failure to come to terms with the interrelatedness of swarm transactions over time strikes at the heart of the only rationale the Note's author presents for why a temporality standard should be applied (other than the author's misplaced assumption that all BitTorrent plaintiffs are abusive). Realistically, extending the faulty logic of "The Case Against… John Doe Copyright Infringement Lawsuits" would argue that no conspiracy to distribute drugs to minors could exist because only the local dealer was present at the schoolyard at the time of the ultimate sale.

Furthermore, in arguing that a temporality requirement is "not manifestly unreasonable," *Id.* at 297, the Note's author essentially forecloses joinder, and thus forecloses the reasonably cost-efficient enforcement of copyrights for a vast number of plaintiffs in many jurisdictions. The one (and only) case identified and praised by the author for its adherence to the temporality standard, *Liberty Media Holdings, LLC v. Does 1-62*, was filed in the Southern District of California and involved a pornographic film from a name-brand and award-winning producer. *Liberty Media Holdings, LLC v. Does 1-62,* 2012 WL 628309 (S.D. Cal. Feb. 24, 2012). Plaintiff believes it is manifestly unreasonable that a less well-known copyright owner of mainstream material should face significantly higher administrative hurdles to enforcement of its copyright, especially given the logical flaws in the temporality standard discussed above. If Congress made no distinction based on the popularity of the copyrighted material, the number of potential infringers, or on the time frame of infringing activity in the enforcement provisions of the Copyright Act, it is not clear why a tenuous interpretation of facts involving Rule 20 should create one.

   **ii. The Temporality Standard Ignores Plaintiff's Logically Related Fact Pattern**

In addition to these shortcomings in analysis, the temporality standard also improperly removes from joinder "logically related" fact patterns such as Plaintiff's. For the word "series" to have any meaning in Rule 20(a), the rule must permit joinder when there is something other than the direct transactions involved in the temporality standard. "Series" has been interpreted by Circuit Courts to

mean a "logically related" fact pattern:

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

*Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

That pleadings such as Plaintiff's involve logically related fact patterns, in spite of the possibility of there being no direct transactions, led one judge to state unequivocally:

> [I]t is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file—could not constitute a "series of transactions or occurrences" for purposes of Rule 20(a).

*Digital Sin, Inc. v. Does 1–176*, 2012 WL 263491, at *5 (S.D.N.Y. Jan. 30, 2012).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia*, that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different but for each of the Defendants' infringements.

### iii. Plaintiff has Pled Additional Transactions Sufficient for Joinder

In addition, the temporality standard ignores a series of transactions, pled by Plaintiff, and not considered by "The Case Against… John Doe Copyright Infringement Lawsuits" -- that each Doe Defendant participated in a collective and interdependent manner with other Defendants via the Internet for the unlawful purpose of reproducing, exchanging and distributing copyrighted material unique to the swarm. Complaint, para. 14. Inasmuch as no Doe Defendant was authorized to distribute Plaintiff's copyrighted work and that hypothetical "temporality-connected" defendants may not have distributed any larger portion of the work, it is entirely arbitrary to focus on whether the Doe Defendants participated in the swarm simultaneously rather than on whether the uploads to the investigator were a 'series of

4

transactions' that were 'logically related.'

At least one court, directly and explicitly considering this issue, found that such uploads to an investigator appropriately support joinder:

> [E]ven if no Doe defendant directly transmitted a piece of the Work to another Doe defendant, the Court is satisfied at this stage of the litigation the claims against each Doe defendant appear to arise out of the same series of transactions or occurrences, namely, the transmission of pieces of the same copy of the Work to the same investigative server.

*Raw Films v. John Does 1-15*, 2012 WL 1019067, at *4 (E.D. Pa. March 26, 2012).

### iv. The Temporality Standard Improperly Requires Direct Transactions

An additional problem with the temporality standard is that its apparent requirement for direct transactions between the Doe Defendants does not comport with the Supreme Court's logic in *United States v. Mississippi*, 380 U.S. 128 (1965). There, the Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote. Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions was related and contained a common nexus of law and fact. *United States v. Mississippi*, 380 U.S. 128 at 142-143 (1965).

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color. On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

*Id.* at 142. Indeed, the Supreme Court held all of the defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

While Plaintiff recognizes that the facts at issue here do not rise to the same level of importance as civil rights litigation, the joinder standard remains the same regardless of the significance of the case.

5

Thus, similar to the defendants in *United States v. Mississippi*, it is not necessary for each of the Doe Defendants to have directly interacted with each other Doe Defendant; or, in the language of the BitTorrent file sharing operation in the case at hand, for each Doe Defendant to have shared a piece of the file with each and every Doe Defendant when downloading the copyrighted work. The Doe Defendants are properly joined because the Doe Defendants all acted under the same system. Here, the Doe Defendants acted as part of a world-wide system designed to disseminate files that would inevitably infringe copyright owners' distribution rights.

  **v.**  **The Temporality Standard Improperly Encourages Severance**

Further, the temporality standard does not comport with the Supreme Court's preference for joinder:

> Under the (Federal) Rules (of Civil Procedure), the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 at 724 (1966). While Plaintiff recognizes that the Court's concerns with respect to potential litigation abuse may raise questions of fairness to the parties, as discussed below, Plaintiff believes such concerns are not applicable in this action.

  **vi.**  **The Temporality Standard is Being Increasingly Rejected (or Broadly Interpreted) by the Courts in the Northern District of Illinois**

Finally, the growing trend in this District recognizes that participation in a swarm qualifies as engaging in a "series of transactions or occurrences" for the purpose of Rule 20(a), and that temporality is not an impediment to joinder in such cases. *See: Site B, LLC v. Does 1-51*, 2014 WL 902688, (N.D. Ill. March 7, 2014) (Leinenweber, J.) "[n]othing in Rule 20(a)'s language requires that parties interact directly with each and every other party to the suit. The phrase 'series of transactions' is broad enough to encompass transactions occurring at other times and involving different parties." *Id.*, 2014 WL 902688, at \*3; *TCYK, LLC v. Does 1-44*, 2014 WL 656786, (N.D. Ill. February 20, 2014) (Dow, J.) "Regardless of whether these … defendants contemporaneously participated in the swarm, shared bits of the seed file with each other, or even shared bits of the file at all, each joined the swarm knowing that his participation

6

increased the swarm's ability to disseminate a common seed file quickly and efficiently." *Id*., 2014 WL 656786, at *3; *TCYK, LLC v. Does 1-62*, 2013 WL 6671675, (N.D. Ill. December 18, 2013) (Gottschall, J.). Joinder permitted for case where defendants participated in the swarm at issue between April 22, 2013 and April 25, 2013. *Id*., 2013 WL 6671675, at *4; TCYK, LLC v. Does 1-87, 2013 WL 5567772, (N.D. Ill. October 9, 2013) (Tharp, J.) (Case where defendants participated in the same swarm reproducing the same seed file between May 1, 2013 and May 17, 2013 justified joinder under Rule 20(a)(2)). *Id*., 2013 WL 5567772, at *4; *Zambezia Film Pty, Ltd. v. Does 1-65*, 2013 WL 4600385 (N.D. Ill. August 29, 2013) (St. Eve, J.) "[T]he Court agrees with those that have concluded that Rule 20(a)(1) does not require a single transaction, direct transactions, or temporal overlap, and thus defendants need not be in the same swarm at the same time to be properly joined." *Id*., Does 1-65, 2013 WL 4600385 at *4; *ReFX Audio Software, Inc. v. Does 1-111*, 2013 WL 3867656, (N.D. Ill. July 23, 2013) (Gettleman, J.) "[P]ermissive joinder does not require that defendants act in concert with each other … nor does it 'have as a precondition that there be temporal distance or temporal overlap.' …. All that is required is a logical relationship between the two causes of action." *Id*., 2013 WL 3867656, at *3 (internal citations omitted). Malibu Media, LLC v. John Does 1-6, 291 F.R.D. 191 (N.D. Ill. 2013) (Castillo, J.) "It is difficult to see how … a series of individuals connecting either directly with each other or as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file – could *not* constitute a 'series of transactions or occurrences' for purposes of Rule 20(a). "*Id*., 291 F.R.D. at 203 citing *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y. 2012).

While not binding on this Court, these cases stand as persuasive authority for the view that the cooperative and interdependent actions of defendants participating in a swarm constitute the requisite "series of transactions or occurrences" under Rule 20(a) to justify joining them in common litigation involving the downloading of the motion picture at issue.

7

### III. PLAINTIFF'S SUIT INVOLVES NO RISK OF ABUSE

Various cases as well as articles such as "The Case Against… John Doe Copyright Infringement Lawsuits," 111 Mich. L. Rev. 283, have generally identified four main avenues for potential litigation abuse in BitTorrent file sharing copyright infringement cases: (a) that the Doe Defendants are unlikely to be under the jurisdiction of the court; (b) that the pornographic nature of the copyrighted work will unduly coerce settlement; (c) that the large number of Doe Defendants renders the proceedings unworkable; and (d) that plaintiffs 'shake down' Doe Defendants to 'extract nuisance-level settlements' without any intention to go to trial. These concerns are either simply not at issue here or entirely misplaced.

#### i. Jurisdiction is Proper for all Doe Defendants

Addressing the issue of jurisdiction, Plaintiff advises the Court that it has made a good faith effort to ensure that all Doe Defendants 1-52 are residents of this District and has alleged same.

#### ii. Plaintiff's Mainstream Film does not Coerce Settlement

Additionally, unlike the adult films at issue in cases including *Bubble Gum Productions, LLC v. Does 1-80*, 2012 WL 2953309 at * 1 (S.D. Fla. Jul. 19, 2012), *Patrick Collins, Inc. v. Does 1-30*, 2013 WL 1157840 at * 1 (E.D. Pa. Mar. 21, 2013), and *Raw Films, Ltd. v. Does 1–32*, 2011 WL 6182025 at * 3 (E.D. Va. 2011), Plaintiff's film, "Dallas Buyers Club" is a mainstream drama. "Dallas Buyers Club" is not, in any way, a film the downloading of which would cause embarrassment or humiliation to any of the Doe Defendants. Accordingly, no undue coercion of settlement due to the nature of the film is implicated in this case.

#### iii. Plaintiff's Case Involves a Reasonable Number of Doe Defendants

Plaintiff understands that numerous other file sharing lawsuits have been filed against untenable numbers of Doe Defendants. *See, e.g., Nu Image, Inc. v. Does 1–23,322*, 799 F. Supp.2d 34 (D.D.C. 2011). Here, however, Plaintiff has filed against just 52 Does who participated in the same swarm. It is unclear why severance, at a later date, if and when a cumbersome number of defenses or motions are actually asserted or filed by then-identified Doe Defendants, would be insufficient to avoid any potential

case management issues. Indeed, from Plaintiff's experience, it is likely that the ISPs will be unable to identify about 10-15% of the Doe Defendants due to data retention issues. Further, for some of the remaining then-identified Doe Defendants, Plaintiff may choose not to proceed for a wide variety of reasons -- such as a defendant being active duty military, a defendant being a company with an open wi-fi connection for patrons, a defendant demonstrating hardship or a defendant recognizing his or her legitimate liability and pursuing early settlement. Plaintiff believes in these circumstances that the likelihood of a case management issue is low, and that any such likelihood is easily addressed by severance at the time the joined case proves problematic.

        iv.        **Plaintiff's Settlements are Proper**

Importantly, Plaintiff maintains that settlement will in fact reduce the number of defendants at issue and that any such settlements will not be tantamount to 'shaking down' the defendant(s) without any intention to go to trial. The Copyright Act provides Plaintiff with one, and only one, option to stop copyright infringement and seek redress for the harm caused thereby: file suit in federal court. Nonetheless, just as in countless other suits filed every day by numerous plaintiffs in a broad array of civil litigation, Plaintiff may seek resolution through settlement. The only difference between this case and every other case is that Plaintiff did not have the ability to identify, contact or negotiate with any defendant before the complaint was filed. As a zealous defender of its copyright, Plaintiff will absolutely take appropriate cases to trial, just as many civil plaintiffs unable to satisfactorily resolve their claims do, every day, in courts nationwide.

Plaintiff respectfully notes that a good-faith determination of appropriate cases for trial is properly reserved for Plaintiff. The District Court for the District of Columbia recognized recently that whether a plaintiff settles a case or decides that pursuing lawsuits against the defendants is no longer feasible, "[e]ither course selected by the Plaintiff would give the copyright owner the opportunity to effectuate its statutorily protected rights and thereby serve our system of justice." *AF Holdings, LLC v. Does 1-1,058*, CIV.A. 12-0048 BAH, 2012 WL 3204917 at *17 (D.D.C. Aug. 6, 2012). The Court explained:

9

> At this stage, the plaintiff is attempting to identify those infringing its copyright so that it may investigate the feasibility of proceeding in lawsuits against them. That the plaintiff chooses, after obtaining identifying information, to pursue settlement or to drop its claims altogether is of no consequence to the Court. The plaintiff . . . has a right to name or decline to assert claims against defendants whose identities and other relevant circumstances become known to the plaintiff.

*Id.* at *14.

Moreover, the Supreme Court has also stated that public policy favors resolutions through settlement. "Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits." *Marek v. Chesny,* 473 U.S. 1, 11 (1985). Further, Plaintiff has a First Amendment right under the petition clause to make settlement demands. *See Sosa v. DirectTV*, 437 F. 3d 923, 937 (9th Cir. 2006) (holding "the protections of the Petition Clause extend to settlement demands as a class," including those made during and prior to a suit.)

In summary, Plaintiff's suit (a) identifies Doe Defendants under the jurisdiction of the court; (b) does not involve a pornographic title; (c) concerns a reasonable number of Doe Defendants; and (d) involves proper settlement, dismissal and/or trial activities similar to those of numerous other civil litigants. Therefore, Plaintiff believes that the concern for potential litigation abuse underlying many of the cases finding severance appropriate is simply not a factor in this matter.

**IV. SEVERANCE INCREASES COSTS WHICH INCREASES RISK OF ABUSE**

Plaintiff submits that suing defendants individually raises significant concerns. Severance will necessarily increase the cost of settlement to the Doe Defendants due to the increased attorneys' fees and costs necessitated by the filing of separate actions. Filing against a single Doe Defendant currently incurs a $400 filing fee, the costs of the ISP in responding to a subpoena requesting identifying information (often in the $75 range), and the professional fees for obtaining IP records, filing the complaint, filing the motion for leave to take discovery, and serving a subpoena. In this context, the costs for identifying an essentially judgment-proof, deceased, or hardship Doe can hardly be less than $500. The foregoing note

10

indicates that "since an innocent John Doe is just as likely to pay up as a guilty one, the lawyers do not need to take much care in ensuring that the John Doe actually was engaged in infringing activity (111 Mich. L. Rev. at 304). While Plaintiff believes that such nefarious motives should not be imputed to either it or its lawyers, even assuming the existence of such bad faith actors, filing individually against each Doe Defendant would do little to mitigate this concern. To the extent they exist, surely such predatory lawyers would be particularly certain to recoup the largely out-of-pocket costs of initially-failed individual Doe cases from those Does seeking settlement (whether innocent or not). According to this line of thought, joinder actually reduces the potential for abuse.

V. **DEFENDANTS BENEFIT FROM SHARED DEFENSES IN JOINED ACTIONS**

Moreover, joinder has been found to be beneficial to Doe Defendants in BitTorrent file sharing cases:

> [J]oinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants. *See London–Sire Records, Inc. v. Doe 1,* 542 F.Supp.2d 153, 161 (D.Mass.2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to share copyrighted sound recordings and the discovery of defendants' identities through the use of a Rule 45 subpoena to their internet service provider). <u>Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised.</u>"

*Call of the Wild Movie, LLC v. Does 1-1,062,* 770 F. Supp. 2d 332, 344 (D.D.C. 2011) (Emphasis added).

VI. **JOINDER PROMOTES JUDICIAL ECONOMY**

Joinder in this case promotes judicial economy. Nothing but inefficiency for this Court is to be gained by forcing a legitimate movie company to sue in separate related suits each Doe Defendant who is infringing its commercially released motion picture through file-sharing the same illegally seeded file. Doing so prior to even allowing Plaintiff to obtain their identifying information would result (in this particular case alone) in the processing of 52 separate lawsuits, issuance of 52 separate notices to the U.S.

11

<0>

Copyright Office, processing and ruling on 52 separate motions to take discovery in advance of the Rule 26 conference, and issuance of 52 separate subpoenas to the ISPs. Joinder eliminates the needless intake of suits against individual Doe Defendants who cannot be identified by an ISP, allows the Plaintiff to settle amicably some claims against those that can be identified, and provides Plaintiff with information indicating whether certain Doe Defendants should be maintained in the suit. Such a result is a key function of Fed. R. Civ. P. 20. The rule is designed "to promote trial convenience and expedite the resolution of lawsuits, thereby eliminating unnecessary lawsuits." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003).

**VII.    PLAINTIFF HAS SHOWN NO BAD FAITH**

As a final matter, Plaintiff respectfully notes that neither it nor its counsel has displayed any evidence of bad faith in this or any other matter. Undersigned counsel are AV Preeminent-rated attorneys in good standing with the state bar of Illinois. The undersigned take their obligations to the Court and to the ethical canons of the practice of law seriously. Regardless of what may or may not transpire with other plaintiffs, or in other jurisdictions, or in other cases, the undersigned have never been and intend never to be part of any 'shake down,' abusive litigation, or abuse of opposing parties. Unless and until some abusive practice is identified, Plaintiff (and the Court) should not face the logistical burden of individual suits. Plaintiff is certainly willing to entertain additional procedural safeguards, short of severance, considered necessary by the Court to ensure a fair and balanced litigation process.

**VIII.    CONCLUSION**

In summary, Plaintiff believes that the temporality standard contemplated by the Court is flawed and that Plaintiff has raised claims arising out of the same series of transactions. This matter does not involve a risk of abuse, and joinder further reduces any risk to the Doe Defendants. Given that joinder will promote judicial economy and that Plaintiff has not demonstrated any bad faith, Plaintiff urges the Court to maintain joinder in this matter.

Respectfully submitted,

Dated: April 8, 2014

DALLAS BUYERS CLUB, LLC

By: /s/ Michael A. Hierl
Michael A. Hierl (Bar No. 3128021)
Todd S. Parkhurst (Bar No. 2145456)
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
Phone: 312-604-2678
E-mail: mhierl@hsplegal.com

Attorneys for Plaintiff
Dallas Buyers Club, LLC

## **CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that a true and correct copy of the foregoing Memorandum in Support of Joinder was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on April 8, 2014.

                                                         s/Michael A. Hierl